The Iowa Railroad Land Co. v. Mickel.

THE IOWA RAILROAD LAND CO. v. MICKEL.

1. **Contract:** WHERE TIME IS OF THE ESSENCE. Where time is made of the essence of the contract by the express terms thereof, and the language of the instrument discloses that a strict compliance with its conditions was the intention of the parties, a failure in performance will entitle the obligor to declare a forfeiture.

2. ————: ————: APPLICATION. A contract for the sale of real estate, to be paid for in installments at times fixed therein, stipulated that upon "failure or default, the times of the payments being of the essence of this contract," the obligor should have the right to terminate the contract. A day of payment falling upon Sunday, the obligee transmitted on Monday an amount three dollars less than the installment due, and the balance some days thereafter: *Held*, that after forfeiture for this breach a court of equity could not interfere to relieve the obligee.

3. ————: ————: FORECLOSURE. Section 3671 of the Revision does not defeat the right of forfeiture and require foreclosure when the parties have provided otherwise in their contract.

*Appeal from Harrison District Court.*

FRIDAY, OCTOBER 22.

THIS action was commenced July 15th, 1873, to recover the possession of the north-west quarter of the north-east quarter of section 15, township 78, range 44 west, of 5th P. M. The plaintiff avers its ownership in fee and its right to immediate possession of the property in controversy. The defendant for answer admitted that he was in possession of the land, and avers his right to such possession under a contract of purchase thereof, made with the plaintiff, which he set forth, and asked that the plaintiff be required to specifically perform the same. The cause was tried to the court upon the agreed state of facts set out in the opinion. Judgment was rendered for the plaintiff. The defendant appeals.

*Montgomery & Scott*, for appellant.

The failure to make the payment at the time when it became due, when time was of the essence of the contract, did

not work a forfeiture. (*Young v. Daniels*, 2 Iowa, 12.) Although in terms time is of the essence of the contract, unless the parties have so created it, equity will not deem it so essential as to support a forfeiture, if the party claiming performance has acted in good faith. (*Mathews v. Gillis*, 1 Iowa, 242; *McClartey v. Gokey*, 31 Id., 505; *Young v. Daniels, supra.*) An unreasonable stipulation that time shall be essential will not be enforced. (*Richmond v. Robinson*, 12 Mich., 193.) The words *may* and *shall* in acts of the legislature are to be construed imperatively. (2 Bouvier's Dic., 150.) As to the effect of foreclosure, see *Hansborough v. Peck*, 5 Wall., 497.

*N. M. Hubbard* and *E. S. Bailey*, for appellee.

When parties have made time of the essence of the contract, they are held to as strict compliance therewith as any other essential condition. (*Davis v. Steens*, 3 Iowa, 158; *Armstrong v. Pierson*, 27 Id., 514; *Phelps v. R. R. Co.*, 63 Ill., 468; *Wells v. Smith*, 7 Paige Ch., 22; *Scott v. Field*, 7 Ohio, 425; 2 Story's Eq. Jur. § 776; Sugden on Vendors, 359; *Hipwell v. Knight*, 1 Young & Coll., 415; 4 Vesey Jr., 689.) Payment otherwise than as stipulated would be a void payment. (Dunlap's Paley on Agency, 274.) There must be knowledge of the existence of a right and an intention to relinquish it to constitute a waiver. (Bigelow on Estoppel, 506.) The fact of accepting one payment at a different time and place than specified will not operate as waiver of the right to insist upon literal compliance in the case of other payments. (*Phelps v. R. R. Co.*, 63 Ill., 468. *Gardner v. Clark*, 21 N. Y., 399.)

COLE, J.—This cause was tried upon the agreed statements of facts, as follows:

1st. In June, 1871, negotiations were had between plaintiff and defendant by correspondence, in writing, about the sale by plaintiff to defendant, of the land in controversy. The defendant claimed that the correspondence amounted to a contract, and plaintiff denied this, and refused to sell or make

a contract of sale for the land. Defendant filed a bill for specific performance, in the Harrison County District Court, for the January term, 1872, to compel the plaintiff to execute such a contract as was finally executed and as set out in defendant's answer.

. The plaintiff, through a mistake as to the time of holding said court, made default, and defendant obtained a decree for specific performance within thirty days, and in default thereof that defendant recover four thousand dollars, with costs, as the value of the land. Plaintiff ascertained that such default had been entered after the thirty days had expired. In settlement of that decree the present contract was issued on the 6th day of May, 1872, but dated as of the date defendant claimed his original contract was made, namely, June 30th, 1871.

. 2d. The contract is as follows: "This agreement made this 30th day of June, in the year 1871, between the Iowa Railroad Land Company, of the first part, and W. D. Mickel, of Missouri Valley, County of Harrison, State of Iowa, of the second part, witnesseth, that in consideration of the stipulations herein contained, and the payments to be made as hereinafter specified, the first party agrees to sell unto the second party the north-west quarter of north-east quarter of section No. fifteen (15), in township No. seventy-eight (78), north of range forty-four (44), west of the fifth principal meridian, being in Harrison County, Iowa, containing, according to the United States survey, forty acres, be the same more or less, for a sum of six hundred dollars, on which the said second party hath paid the sum of one hundred and seventy-seven dollars, being one hundred and fifty dollars principal, and one year's interest in advance, at six per cent per annum.

And the said second party, in consideration of the premises, hereby agrees to pay to the said first party, at the Land Office of the Iowa Railroad Land Company, at Cedar Rapids, Iowa, the following sums of principal and interest at the several times named below:

The Iowa Railroad Land Co. v. Mickel.

|  | DAY. | MONTH. | YEAR. | PRINCIPAL. | INTEREST. | AMOUNT. |
|---|---|---|---|---|---|---|
| First payment.... | 30 | June.... | 1871 | $150 00 | $27 00 | $177 00 |
| Second payment.. | 30 | June.... | 1872 | 150 00 | 18 00 | 168 00 |
| Third payment... | 30 | June.... | 1873 | 150 00 | 9 00 | 159 00 |
| ................ | 30 | June.... | 1874 | 150 00 | .......... | 150 00 |

And it being mutually understood that the above premises are sold to the said second party for improvement and cultivation, the second party hereby further agrees and obligates himself, his heirs and assigns, that all improvements placed upon said premises shall remain thereon, and shall not be removed or destroyed until final payment for said land; and further that he will punctually pay said sum of money above specified, as each of the sums becomes due; and that he will regularly and seasonably pay all such taxes, and assesments as may be lawfully imposed upon said premises.

In case the said second party, his legal representatives or his assigns, shall pay the several sums of money aforesaid, punctually and at the several times above limited, and shall *strictly and literally* perform all and singular his agreements and stipulations aforesaid, after their true tenor and intent, then the first party will make unto the said second party, his heirs or assigns, (upon request at the Land Office, at Cedar Rapids, and the surrender of this contract), a deed conveying said premises in fee simple, with the ordinary covenants of warranty. But in case the second party shall fail to make the payments aforesaid, or any of them, *punctually and upon the strict terms and times above limited*, and likewise to perform and complete all and each of his agreements and stipulations aforesaid, strictly and literally without any failure or default, *the times of the payments being of the essence of this contract*, then the first party shall have the right to declare this contract null and void, and all rights and interests hereby created, or then existing, in favor of said second party, or derived under this contract shall utterly cease and determine, and the premises hereby contracted shall revert and revest in said first party, (without any declaration of forfeiture, or act,

or re-entry, or without any other act by said first party to be performed, and without any right of said second party for reclamation or compensation for moneys paid or improvements made,) as absolutely, fully and perfectly as if this contract had never been made.

And it is further stipulated that no assignment of the premises shall be valid unless the same shall be indorsed hereon, or permanently attached hereto and countersigned by the proper officer of the company, (for which purpose the contract must be sent to the office of the company by mail or otherwise,) and that no agreement or conditions or relations between the second party, and his assignee or any other person acquiring title or interest through or from him, shall preclude the first party from the right to convey the premises to the said second party, or his assigns on the surrender of this agreement, and the payment of the unpaid portion of the purchase money, which may be due to the first party."

In witness, etc., (duly signed and stamped.)

3.　The principal business office of the plaintiff has always been at Cedar Rapids, Iowa, and the defendant resided 250 miles distant at Missouri Valley. The contract was made at Cedar Rapids, and sent to L. Burnett, to be delivered to defendant upon payment of the first installment of the purchase money. Some difference existing about the amount, Burnett kept the contract about two weeks, when Brown took the contract to defendant and received the first payment. Brown was the local agent at Missouri Valley for the plaintiff, and received and delivered contracts and the like, but had no power to sell or fix the price upon lands, or in any manner alter the contracts of plaintiff.

The second payment fell due June 30, 1872, which was Sunday. There were two trains each way on the Chicago & Northwestern Railway, between Missouri Valley and Cedar Rapids at that time, one leaving Missouri Valley every morning except Sunday morning about 6:30, and arriving at Cedar Rapids about 8:30 P. M., of the same day; and, the other train leaving Missouri Valley about 6:30 P. M., every day except Saturday, and arriving at Cedar Rapids about 7:30 next morn-

ing. They both carried express matter. Monday morning,. July 1st, 1872, about 9 o'clock, defendant offered to Brown the second payment, who declined to receive it because he had written plaintiff at Cedar Rapids if he should collect this payment and had received no answer, and suggested, upon inquiry of defendant how he should send it, to send it by express, which defendant did by depositing the money in the express office, duly directed to plaintiff at Cedar Rapids, about 9 o'clock A. M., of that day. The amount so sent was by mistake three dollars less than the amount due as the second payment, which plaintiff forwarded by letter on July 5th, 1872. On July 2, 1872, at 9 o'clock, A. M., the plaintiff cancelled the said contract in writing on the back thereof as follows:

"OFFICE OF THE IOWA RAILROAD LAND CO.,
          CEDAR RAPIDS, July 2, 1873.

The within contract not being complied with on the part of said W. D. Mickel, and being delinquent in the payment as stipulated therein, the sale is hereby cancelled, and possession of the land is hereby resumed by the Iowa Railroad Land Company.                     J. B. CALHOUN,
     Approved,                         Land Commissioner.
        J. VANDERVENTER, President.
   Countersigned,          CHAS. H. CLARK, Register."

About 11 o'clock of July 2, 1872, the second payment, less three dollars, was received by plaintiff by express from defendant. Notice of this cancellation was on that day transmitted by letter to defendant, and the money sent by defendant for the second payment was on that day returned to him by express. On the 3d day of July, 1872, the first payment was returned to Brown, plaintiff's agent, Missouri Valley, to be delivered to defendant, and was on the fourth day of July, 1872, tendered to defendant, and by him refused, and the same is still in the hands of said Brown, subject to defendant's order. Defendant at once notified plaintiff that he would not recognize the cancellation, and tendered back the first pay-

ment, which was refused, and in due time, as by the terms of the contract, tendered the third and fourth payments to plaintiff, and demanded a deed, all of which was duly refused by plaintiff. The whole purchase money is subject to plaintiff's order, if the contract was wrongfully cancelled, and is still, in law, in force.

The defendant took possession of the land under his contract, and laid out and platted a part of it into town lots, and sold several lots, upon which improvements have been made to the amount of about four thousand dollars.

A careful reading of the contract discovers the manifest purpose, on the part of the draftsman, to require a strict performance of each and every stipulation, promptly at the very time and place specified. This is sufficiently indicated by the repetition that the stipulations shall be punctually, strictly, and literally performed. Its general requirements of punctuality in the time of performance would justify the construction that time was intended to be made of the essence of the contract; but, in addition to such general statements thrice repeated, there is the express language, that "the time of the payments are of the essence of this contract," and, as if to render the construction of the contract absolutely certain, and free from all doubt, the rights of the parties, in case of default in defendant to perform strictly, literally, and punctually, are expressly pointed out and provided for. And these are, that the defendant's rights, under the contract, shall utterly cease, and determine, and no right to recover monies paid under it should exist.

1. CONTRACT: where time is of the essence.

The fact that the second payment fell due on a Sunday, instead of a business day of the week, cannot have any effect upon the right of the plaintiff to declare a forfeiture, upon a failure to pay that installment at maturity. It only had the effect to delay the legal maturity one day; but it was absolutely due on the Monday following, and a failure to pay it then was a failure on the part of defendant to comply, whereby his rights under the contract were actually forfeited.

His offer to pay less than the amount due, on the day following, could not relieve the forfeiture, nor restore vitality to

the contract for him. The offer to pay the balance of that installment, some days subsequent, could not cure the defendant's default. In other words, it is manifest from the contract itself, and the previous transactions between the parties, that they intended to make a strict contract, with time as the essence of it, and with the full purpose on defendant's part to perform it, and with the right in plaintiff to avoid its obligations, in case of defendant's failure so to perform. The real intent of the parties, which is always the fact to be ascertained in construing agreements, was very manifestly that in the case of the defendant's default in performance, the plaintiff should have the right to declare the contract at an end. This has been done, and we are not aware of any precedent which will authorize a court of equity to relieve a party from the consequences of his own deliberate contract.

. II. But it is claimed by appellant, that Rev., Sec. 3671, which enacts that "the vendors of real estate, when part, or all

s. ———: ———: fore-
closure. of the purchase money remains unpaid after the day fixed for payment, whether time is, or is not the essence of the contract, may file his petition, asking the court to require the purchaser to perform his contract, or to foreclose and sell his interest in the property," has changed the right of parties, under such contract as the one in question, so as to defeat the right of forfeiture, and requires foreclosure. In this view we cannot concur. The language of the statute, as well as its corresponding section of the Code, being Sec. 3329, is simply permissive, and certainly does not undertake to deny any right which parties to such instruments may have had. Such rights are expressly reserved by Rev., Sec. 3674. We see no escape from the conclusion reached by the court below, and cannot do otherwise than order, that the judgment be

AFFIRMED.