JOHNSON v. THORNTON ET AL.

JOHNSON v. THORNTON.

JOHNSON v. THORNTON.

1. **Public Lands**: RAILROAD GRANT. *The C. B. & Q. R. Co. v. Lewis,* 53 Iowa, 101, followed.

2. **Contract**: FOR CONVEYANCE OF LAND: CANCELLATION OF. Where a contract for the sale and conveyance of land was executed while section 3674 of the Revision was in force, and provided that upon failure of the vendee to make the payments therein provided for his rights under the contract should be forfeited, it was held that upon such default the contract might be canceled by the vendor without an action of foreclosure.

3. **Public Lands**: RAILROAD GRANT: EVIDENCE. The certificate of the commissioner of the general land office, showing that certain lands were contained in the list of lands covered by a railroad grant, and the certificate of the secretary of the interior approving such list, are competent and sufficient evidence that the lands described passed to the railroad company under the grant.

*Appeal from Montgomery Circuit Court.*

FRIDAY, JUNE 18.

THESE cases are submitted upon one abstract. They are actions in equity to recover possession, and quiet the title of several tracts of land situated in Montgomery county. There were decrees rendered in each case in the court below for plaintiff. Defendants appeal. The facts of the cases appear in the opinion.

*D. H. Solomon,* for appellants.

*A. Beeson, Smith McPherson* and *W. W. Baldwin,* for appellee.

BECK, J.—I. These cases, under the agreement of the parties as presented in the abstract, are to be considered together. The two cases last named, it was agreed in the court

below, should abide the result in the first, and the party recovering judgment in that case should have judgment in the others. They seem to involve the same questions. At all events this agreement must control the decision of the last two cases, without a separate examination of each. We will proceed to the consideration of the first case upon the abstracts presented by the parties.

II. The petition alleges that plaintiff is owner of the lands in controversy, and that defendants are in possession thereof, and set up a claim of title thereto. The lands are a part of the grant made by the act of Congress of May 15, 1856, to aid in the construction of certain railroads. The petition shows that plaintiff claims under a contract of purchase from the Chicago, Burlington and Quincy Railroad Company, that corporation holding title to the land under the grant from Congress, by proper conveyance from the Burlington & Missouri River Railroad Company, the corporation to whom the lands were conferred by the state and national legislation.

The answer of defendants alleges that on the 7th day of June, 1870, the Burlington & Missouri River Railroad Company sold, by a written contract, the land in controversy to one Broady, and represented that it was then the owner of the property; that the sale was in consideration of thirteen dollars per acre, to be paid in annual installments; that Broady made valuable improvements upon the land; that after two of the installments had been paid Broady, in 1875, sold the land to defendants, who went into possession thereof, and have held it ever since, and that defendants paid three installments of the purchase money and no more. As an excuse for not paying the other installments, defendants allege that the B. & M. R. R. Co. executed a mortgage to certain trustees named therein, which provides that the railroad company shall have authority to sell the land with the assent and approval of the trustees, and that all payments or securities received in payment for the lands shall be delivered to the trustees, and when the land shall have been paid for a deed shall be executed, and

the land shall thereby be released of the lien of the mortgage. It is further alleged that the B. & M. R. R. Co., in 1872, sold all its lands including the land in controversy to the C., B. & Q. R. Co., a foreign corporation that has no power to purchase and own the lands; that the B. & M. R. R. Co. has passed out of existence and is insolvent; that the legal title to the land was, at the date of the sale, and has ever since remained, in Broady; that defendants have not known that the trustees have had an agent or officer in the State, and for that reason they have been unable to make payments of the installments due upon the land. Other matters are alleged in the answer as grounds justifying defendants in withholding payments of installments due, upon the contract for the purchase of the land. The defendants ask that the B. & M. R. R. Co., the C., B. & Q. R. Co. and the trustees, or their successors, named in the mortgage may be made parties, and be required to show the title under which plaintiff claims, and defendants tender and bring into court the amount due upon the contract under which they claim the land.

The plaintiffs and B. & M. R. R. Co. and C., B. & Q. R. Co., in reply to the answer of defendants, allege that the contract with Broady was forfeited for non-payment of installments due thereon, and was canceled in accord with its express provisions, and a contract was made with plaintiff under which the land was sold to him; they also allege that the B. & M. R. R. Co. acquired title to the land under the railroad grant, and it was conveyed to the C., B. & Q. R. Co., and plaintiff, by virtue of his contract with the corporation last named, acquired an interest in the property.

The pleadings are voluminous, and the foregoing does not fully state their substance, but is sufficient to indicate certain defenses pleaded to the action.

III. The defendants insist that they cannot be regarded in default, for the reason it does not appear that the railroad

1. PUBLIC lands : railroad grant. companies acquired any title to the land under the act of the Iowa Legislature of July 14, 1856,

which was passed before any part of the road was completed. This precise point was, by this court, decided in *The C., B. & Q. R. Co. v. Lewis et al.*, 53 Iowa, 101. We held, in that case, that the failure to build the road as prescribed by the grant would not defeat the legislation conferring the land upon the railroad company. See, also, *C., R. I. & P. R. Co. v. Grinnell*, 51 Iowa, 476.

Other questions are raised in this case which are settled in *C., B. & Q. R. Co. v. Lewis et al., supra.* The title held good in that case is the same as the title under which plaintiff claims in this. That decision sustains the right of plaintiff to recover in this, unless it should appear that the contract with Broady was not lawfully canceled. To this question we will now direct our attention.

IV. The contract makes time of payment of the installments of its essence, and stipulates that, in case of default

2. CONTRACT for conveyance of land: cancellation of. of payment at the times prescribed, the purchaser shall forfeit all claim to the land and stand as though the contract had never been made. It also provides that the purchaser waives all remedy he may have at law to retain possession of the property. Under this contract, upon default in the payment of the installments, or any one of them, the vendor of the land was authorized to cancel the contract. See *Iowa Railroad Land Co. v. Mickel*, 41 Iowa, 402.

But counsel for defendants insists that, under the statutes of the State, the contract cannot be forfeited, and the vendor must enforce his remedy by an action in court. He relies, to support his position, upon Code, § 3329, which provides that a vendor, when he has given a bond or writing to convey land upon payment of the purchase money, if default be made in payment, may maintain an action to require the purchaser to perform his contract, whether time is or is not of the essence of the contract. It has been held that this provision does not take away the right of the vendor to declare a forfeiture. *Iowa Railroad Land Co. v. Mickel*, 41 Iowa, 402.

But counsel for defendants insists the right recognized in this decision was based upon § 3674 of the Revision, which reserved the right to enforce contracts in accordance with their provisions. This section is not incorporated in the Code. Counsel insists, therefore, that no other remedy exists upon a breach of the contract except by action. Without passing upon the question in the shape counsel presents it, we may dispose of it in view of the fact that § 3674 of the Revision was in force when the contract in question was executed. It expressly provides that in case of forfeiture the contract shall be canceled, and the right to the land shall revert to the vendor, and the vendee shall have no right to relief from the effects of a failure to perform the contract as prescribed therein by an action in court.

These stipulations were in accord with the statute when the contract was executed. A change in the statute could not defeat them.

V. It is insisted that the mortgage executed by the B. & M. R. R. Co. was an obstacle in the way of defendants' procuring a clear title to the land, and, therefore, they were justified in withholding payments upon the contract, and it could not have been canceled while the railroad company was unable to give a clear title on account of the mortgage.

The mortgage, it will be remembered, had been executed and was upon record when the contract with defendants' assignors was executed. They had full notice of its conditions. It provides that the company may sell the lands with the approval of the trustees mentioned in the mortgage, and the moneys and securities received upon such sales shall be paid to the trustees. The trustees approved the contract under which defendants claim, and received all installments paid thereon. The agent or officer of the railroad company authorized to sell the land was also agent of the trustees, and authorized to receive payments upon the contract. He had an office in the State. The existence of the mortgage in no manner interfered with defendants in the performance of

their contract, and in no manner was in the way of securing a clear title when the land was paid for.

VI. The conveyance of the lands to the C., B. & Q. R. Co. in no manner affected defendants' rights. They were in possession of the land under their contract. The railroad company was charged with notice of the contract for the sale of the land to defendants, and of their rights thereunder. Besides this, we understand from the abstract that the C. B. & Q. R. Co. became bound, as the assignee of the contract with defendants, to convey the land when all payments therefor were made.

VII. The plaintiff offered in evidence the book of "original entries" of Montgomory county, or a certified copy thereof, showing that the land in controversy was certified to the B. & M. R. R. Co. under the grant by congress. Counsel insists that the entry of the land in question in this book of "original entries" is not authorized by the statute requiring such a book to be kept. Code, § § 3703, 3704.

Let it be admitted, for the purpose of this case, that the objection is well taken. The object of the evidence was to show that the land had been duly certified as inuring to the railroad under the grant of congress. This fact was shown by other evidence admitted at the trial; namely, the certificate of the commissioner of the general land office, showing that the land is contained in the list of lands covered by the grant, and the certificate of the Secretary of the Interior approving such list.

By this evidence the lands were sufficiently indentified as being covered by the grant, and the admission of the book of "original entries," if erroneous, was without prejudice.

VIII. The defendants offered to prove that the land in question, for which Broady in his contract agreed to pay $13 per acre, was appraised by B. & M. R. R. Co. at $4 and $5 per acre. The evidence was properly excluded. If Broady undertook to pay $13 per acre for lands worth $4, this fact constitutes no ground of ob-

3. PUBLIC
lands: railroad grant:
evidence.

jection to enforcing the contract. In the absence of fraud, and none is shown, Broady's contract is not affected by the fact that the land was worth less than the price he agreed to pay. The evidence was immaterial, and, therefore, properly excluded.

Other questions raised by the assignment of errors, which are argued by counsel and are not discussed in this opinion, are disposed of by reference to the case of *C., B. & Q. R. Co. v. Lewis et al., supra.*

The judgment in the three cases must be

AFFIRMED.