BELLE GAUGHEN, *et al.*, v. J. C. KERR, *et al.*, Appellants.

**Land Contract:** STRICT FORFEITURE: *Waiver.* Kerr and Moody sold land to Smith on contract, which arranged for deferred payments evidenced by notes, and it provided that on failure to make stipulated payments strictly, "then first party shall have the right to declare this agreement null and void, and all rights or interests thereby created or then existing in favor of second party shall utterly cease and determine, and the premises shall revert *without any declaration of forfeiture*, and without right of second party for *reclamation or compensation for moneys paid,* as absolutely and fully as if this contract had never been made." Smith assigned his contract to Gaughen with the consent of Kerr and Moody. At this time Smith was, and had for some time, been in default on some of the notes, but Kerr and Moody had never indicated that they desired to take advantage of that fact by declaring the contract forfeited. When the assignment to Gaughen was made, Kerr and Moody were paid the said notes, then in

default, and an arrangement was made at about the same time by which the payment of certain of the notes due in future was anticipated. Thereafter, while other of the notes were in default, Kerr and Moody sold the land, subject to the contract, to Doyle. They still had no apparent intention of claiming a forfeiture. Doyle, without notice to Gaughen's representatives, entered a cancellation on the back of the contract, on the ground of failure to make stipulated payments at this time. While payments had never been made according to the terms of the contract, more had been paid than if the contract had been observed in regard to payments. Doyle retained and never offered to return the notes until he filed answer in an action brought to obtain deed from him. *Held*,

    a. The failure to make stipulated payments promptly did not *ipso facto* work a forfeiture, but merely gave Kerr and Moody a right to declare a forfeiture, which right would be waived unless exercised promptly.

    b. Under the circumstances stated Kerr and Moody must be held to have elected to continue the contract in force, notwithstanding default. They could not afterwards rescind without notice, and Doyle took no greater rights than Kerr and Moody had.

    c. Though the contract denied compensation to or reclamation by second party, Doyle could not keep the unpaid notes and then treat the contract as forfeited.

**Appeal:** OBJECTION BELOW. A defendant in an action for specific performance, who asserts that plaintiff had forfeited his rights by neglect to make certain payments, cannot for the first time, on appeal, raise the objection of failure to demand a conveyance.

*Appeal from Pocahontas District Court.*—HON. LOT THOMAS, Judge.

THURSDAY, OCTOBER 15, 1896.

ACTION for the specific performance of a contract to convey real estate. Decree for plaintiffs, and the defendant, Terrance Doyle, appeals.—*Affirmed.*

*E. W. Paige* and *Frank Farrell* for appellants.

*Botsford, Healy & Healy* for appellees.

GRANGER, J.—The learned judge who tried the case below, prepared and filed an opinion presenting the facts and conclusions, as follows:

"I. Finding of the court. This is an action for specific performance of a contract for the sale of real estate. The following facts are established with but little conflict: (1) On the 28th day of March, 1889, the defendants, J. C. Kerr and L. W. Moody, entered into a written contract with one G. W. Smith, for the sale of land in controversy, for the agreed price of $1,109.35, for which Smith executed his several promissory notes as follows: One for $109.35, and one for $100, due January 1,. 1890; two for $100 each, due January 1, 1891; two for $100 each, due January 1, 1892, and two for $250 each, due January 1, 1893; and all bearing interest at eight per cent. per annum, payable annually. In addition to the payment of these notes, Smith assumed the payment of the mortgage on the land for $1,000, with the semi-annual interest thereon at 8 per cent., and also the payment of the taxes for the year 1888 and the subsequent taxes. (2) The contract of sale, after providing for the execution of a deed, upon the payments being made punctually, at the several times limited, and a strict literal performance of the contract on the part of the purchaser, contains the further stipulations: 'But in case the second party shall fail to make the payments aforesaid, or any of them, punctually, and upon the strict terms and times above limited, and likewise to. perform and complete all and each of his agreements and stipulations aforesaid, strictly and literally, without any failure or default, the times of the payments, of said notes as above specified, being of the essence of this agreement, then the first party shall have the right to declare this agreement null and void, and all rights and interests thereby

created or then existing in favor of said second party, or derived under this agreement, shall utterly cease and determine, and the premises hereby contracted shall revert and revest in said first party, without any declaration of forfeiture, or act of re-entry, and without any other act by said first party performed, and without any right of said second party for the reclamation or compensation for moneys paid or improvements made, as absolutely, fully, and perfectly, as if this contract had never been made.' (3) On the fourth day of March, 1890, Smith assigned his contract of purchase to P. J. Gaughen, and, to this assignment, Kerr and Moody gave their consent by an endorsement made by them on the back of the contract. At the time this assignment was made, the two notes falling due January 1, 1890, were paid; and at the same time, or soon after, an arrangement was made between Gaughen, Smith, and Moody, by which one of the notes falling due January 1, 1891, and one of the notes falling due January 1, 1892, and one of the notes falling due January 1, 1893, were taken up,—and in lieu thereof Moody took the personal obligations of Smith; so that these notes no longer remained an obligation against the land. (4) On May 20, 1890, P. J. Gaughen died, intestate; and the plaintiffs are the heirs and legal representatives of his estate. (5) On the twenty-third day of July, 1891, Kerr and Moody conveyed the land to the defendant, Terrance Doyle, 'subject to all liens and incumbrances whatsoever created by contract or operation of law since the twenty-eighth day of March, 1889,' and at the same time assigned to Doyle the land contract, and indorsed to him the notes for $450 remaining unpaid. The consideration paid by Doyle for these transfers was the $450, with the interest remaining unpaid on the same, and the assumption of the payment of the $1,000 mortgage, which had been assumed by the

purchaser in the land contract. (6) On the 3d day of August, 1891, the defendant Doyle made an indorsement on the back of the contract assigned to him, purporting to cancel the same, on the ground of the failure to make payments as stipulated in the contract. This cancellation was made without notice to the plaintiffs or to any one interested in the Gaughen estate. Doyle did not surrender, or offer to surrender, the notes for the purchase money, but continued to hold the same, without offering to surrender them, until the filing of his answer in this case. At the time of this cancellation, the $100 note due January 1, 1891, had not been paid, nor had the taxes for 1888 or 1889 been paid. (7) Up to the time the transfers were made to Doyle, Kerr and Moody had not exercised the right to declare this agreement null and void, but were holding it and the notes given for the purchase price of the land as the valid obligations of the purchasers. (8) There is due on the unpaid purchase notes the sum of $646.87, with ten per cent. per annum from the 1st day of January, 1894. (9) On October 26, 1891, the defendant Doyle paid $66.60 to redeem the land from tax sale for the taxes of 1888 and 1889. (10) September, 1891, Doyle paid interest on the $1,000 mortgage, the sum of $145.16. (11) The testimony as to whether the $1,000 mortgage on the land has been paid is unsatisfactory. Doyle testifies that he paid this mortgage, and, further along in his testimony, he says that there is a mortgage now on the land of $1,000. From this meager statement, I apprehend the truth is that he procured the funds to pay the first $1,000 mortgage by executing a new mortgage for that sum. (12) Mr. Doyle says in his testimony, 'I have paid the taxes right along on the land ever since;' meaning, evidently, since he obtained a conveyance from Moody and Kerr. But there is nothing found in the record from which

the amount paid for taxes can be determined.  (13)
There is evidence in the case tending to show that Doyle
was in the possession of the land for the years 1892
and 1893, and also evidence as to the rental value of
the land.  But there are no allegations in the plead-
ings or issues raised to which this evidence can apply.

"Upon the foregoing facts, the court submits its
opinion upon the law of the case as follows:  .

"The note for $100, due January 1, 1891, was
unpaid at the time Moody & Kerr assigned the con-
tract °in question to the defendant, Doyle, and at the
time Doyle assumed to cancel the contract.  By rea-
son of the non-payment of this note and certain taxes
due upon the land, and the non-payment of the inter-
est due on the $1,000 mortgages, the defendant. Doyle,
contends that the contract has been forfeited.  As one
ground for avoiding a forfeiture, the plaintiffs allege
in their petition, in substance, that 'neither of them
had any knowledge or notice of the terms or obliga-
tions of the said contract until after the 1st day of
December, 1891; nor were they able to discover or
find, after diligent search, that the said contract, or a
duplicate thereof, was in the possession of the said
defendant; neither had they any knowledge, or were
they aware, of the times of payment provided in said
contract, or the amount, or the times, of said pay-
ments, or whether they were to be made, until after
the 1st day of September, 1891, when a duplicate of
said contract was found.'  It is further alleged that
prior to that date they called on the defendant,
Moody, for a statement of the amount due on said
contract, and that he refused to give a statement
thereof, although he had full knowledge thereof.
Doubtless, if these allegations were true, a case would
be presented wherein a court of equity would grant
relief from a forfeiture declared upon the contract,
and grant a specific performance upon payment being

made. But there is nothing in the evidence to warrant the court to find any such cause existed for not making the payments in accordance with the terms of the contract.

"2. It is next urged by the defendant in argument that, before a court of equity will decree a specific performance, a demand must be alleged and proved. As a general proposition, this is correct. The plaintiffs have not alleged in their petition a demand and refusal in direct terms. If the allegations of the petition are not sufficient in this respect, the question could, and perhaps should have been raised by demurrer, or it might be raised by answer. But this question is not in any manner raised by the pleadings; and the defendant, having taken issue on the allegations of the petition, by asserting title in himself, to the land, and that the plaintiff's rights have been forfeited, has raised this question, and tendered an issue for trial on the merits, and cannot now defeat this action by urging a failure to make demand.

"3. This brings us to a consideration of the question as to whether there has been such a forfeiture of the contract as to bar the plaintiff's rights thereunder. The time of payments of the notes is made, by express stipulation, of the essence of the contract. The parties have made it an essential part of the contract, but not in that sense as claimed by the defendant in his contention that, 'by the terms of this agreement, the failure of the plaintiff to make payment of the note coming due on January 1, 1890 [meaning, perhaps, 1891], *ipso facto* wrought a forfeiture of all their right under the contract. The failure to pay the taxes for 1889 wrought a like result. The failure to make the interest payments on the Pearson mortgage had a like effect.' A failure to pay promptly when due does not *ipso facto* work a

forfeiture of the contract. The parties did not so stipulate, and a court of equity will not extend the language beyond its fair import, to sustain a forfeiture, but rather limit it to its literal meaning, when that is necessary to give effect to its provisions, and maintain the rights of the parties under the contract. The language of the contract is, that upon failure to pay promptly when due, 'then the first party shall have the right to declare this agreement null and void.' This is a stipulation for the benefit of the grantor, and under it he may elect to declare a forfeiture or continue the contract in force, and upon his failure to make such election, the contract remains in force.

"The note of $100 fell due January 1, 1891, and the taxes of 1888 and 1889 were due long prior to that time, and Moody and Kerr had not exercised their right to declare the contract null and void up to the 23d day of July, 1891, when they assigned these notes and contract, and conveyed the land in question to the defendant Doyle. After these assignments and conveyance were made, the defendant Doyle, claiming the right of a strict forfeiture, entered a cancellation upon the back of the contract. In the case of *Land Co. v. Hillis*, 76 Iowa, 246 (41 N. W. Rep. 8), the court says: 'The plaintiff is insisting on the strict right of forfeiture. It should be diligent to exercise its right.' The court, referring to the case of *Land Co. v. Mickel*, 41 Iowa, 402, says: 'A forfeiture of a contract in all respects like those in the case at bar was upheld. But the plaintiff in that case was prompt to exercise its rights.' In *Hall v. Delaplaine*, 5 Wis. 206, in discussing the right to declare a forfeiture of a contract for the sale of real estate, the court says: 'We are strongly inclined to believe that this option should have been made at the time of the failure to pay the money.' And, as reasons for such opinion, it is said: 'It appears to us that it would be

inequitable to allow the bargainers to wait after the time fixed for the payment of the money had elapsed, and then make their option, or not make it, as the land should increase or decrease in value.' In that case the court only mooted the question, and intimated its opinion, and cited reasons in support thereof, without rendering a definite decision. But in the later case of *Basse v. Gallegger*, 7 Wis. 448, the question was again before that court, and it was held that a 'reservation of option to declare a contract void for default must be exercised by election at time of default, to be of any effect.' A different rule would leave the matter entirely at the mercy of the seller. He could continue the contract in force as long as it would seem to be for his interests to do so. If the land should become more valuable, it would be within his power at any time to declare a forfeiture, and take possession, and reap the benefits of such enhanced value; while, if there should be a depreciation, he could insist on the enforcement of the contract. Such a construction will not be upheld unless the clear import of the contract requires it. It is a reasonable construction of the provisions of the contract, and more in harmony with equity and good conscience, to hold that the parties intended, not only that prompt payment should be made, but also that the right to forfeit, to be available, should be exercised with promptness.

"4. Moody and Kerr held the contract in force up to the time they made the conveyance and assignments to the defendant Doyle. It does not appear that they entertained the purpose of declaring a forfeiture. They held the notes for the purchase money as valid obligations, and in the transfers they only sought and obtained from Doyle the amount due on the contract. This indicates a purpose on their part to continue the contract in force; and, having so elected, they could not afterwards rescind

without, at least, giving the plaintiffs notice of their purpose to do so, and a reasonable time thereafter to make payment, and they could not transfer to Doyle any greater right than they themselves possessed. It appears from the evidence that Doyle took a convey-. ance of the land and the assignments of the notes and contract; not that he wanted the land, but that a Mr. Duckworth held a claim against the estate of P. J. Gaughen, and he thought it would aid them in getting it fixed up. We may here apply, as fitting the case, the language of the court in the case of *Curtis v. Gutz*, 90 Iowa, 767 (58 N. W. Rep. 883, 885): "The plaintiff [here the defendant] evidently engaged in this enterprise as a legal venture, and with full knowledge of the situation. He is in no better situation than would be W. J. Barney & Co. [Moody & Kerr], or those for whom they act. Their claim for a forfeiture could not be entertained with favor.' It might with propriety add to this, 'much less the claim of Doyle under the facts of this case.' He received from Moody and Kerr, by indorsement, the unpaid purchase-money notes, and a few days thereafter attempted to cancel the contract, without notice to the plaintiffs, and without offering to return the notes. He held the notes, and at the same time insisted upon his right to cancel the contract. The contract provides that in case of forfeiture it shall be 'without any right of second party for reclamation or compensation for moneys paid or improvements made.' But it is nowhere provided that the party may declare a forfeiture and at the same time hold the notes of the purchaser. If he has the right to hold the notes of the purchaser, he would have the right to collect them. The notes are negotiable on their face, and would pass by indorsement; and if the defendant can declare a forfeiture of the contract, and hold the notes himself, I can see no reason why he could not do so if the notes were transferred to an

innocent holder. The notes in suit were rendered unnegotiable by the indorsement of the defendant. But that fact would not affect the rule of law as a general proposition. It could only be said that in this particular case the plaintiffs could interpose a valid defense to the notes if suit be brought thereon. Where the vendor insists on a strict forfeiture, the vendee should not be subjected to the hazard of a probable suit on the unpaid notes, but vender should be required to relieve the purchaser from his obligation on the notes by delivering them up as a part of the declaration of forfeiture.

"5. There is still another fact entitled to consideration, which, if not sufficient in itself to warrant the relief prayed, is, at least, a strong circumstance to be taken into consideration in determining whether the defendants, Moody and Kerr, had not waived the provision of the contract requiring strict and literal performance. At the time of the assignment of the contract of purchase by Smith and Gaughen, March 4, 1890, by a verbal agreement between Moody and Kerr, and Smith, and Gaughen, the two $100 notes due January 1, 1890, one note for $100 due January 1, 1891, one note of $100 due January 1, 1892, and one note of $250 due January 1, 1893, were taken up, and for the amount of the last two named notes Moody. took the individual obligation of Smith, leaving unpaid on the land a note of $100 due January 1, 1891, a note of $100 due January 1, 1892, and a note of $250 due January 1, 1893. Under this state of facts it will be seen that, at the time that the defendant declared a forfeiture of the contract, there was only $450 of the purchase money unpaid; while, if payment had been made according to the letter of the contract, there would have remained unpaid at that date the sum of $750, the purchaser having at that time paid much more than was due. Under such state of affairs there

is no principle upon which a court of equity would sustain a forfeiture, unless it be required by the unrelenting provisions of the contract. Payments had at no time been made as required, at the stipulated time; but, notwithstanding this fact, the contract had been continued between the sellers and purchasers, and was in force, and so held and considered by Moody and Kerr, at the time they made the transfer to Doyle. Under this state of facts here presented, I am clearly of the opinion that Moody and Kerr should be held to have waived a strict performance of the contract, and the defendant, Doyle, having taken this conveyance and assignment with notice, stands in no better position than those from whom he acquired his rights.

"It follows from the foregoing considerations that a specific performance of the contract should be decreed; that an accounting be had, and the amount to be paid by the plaintiffs be determined, and date fixed for the payment of the same.

"LOT THOMAS, Judge."

Of the correctness of the court's conclusion, legally and equitably, we are without doubt. We attach controlling importance to the fact that when Smith assigned his contract of purchase to Gaughen, with the consent of Kerr and Moody, two of the notes, then past due, for default in payment of which a forfeiture might have been claimed, were paid to Kerr and Moody; and then, or soon after, Kerr and Moody accepted the notes of Smith in lieu of three of the other notes, one falling due January 1, 1891, one January 1, 1892, and one January 1, 1893, and this transaction was on the fourth day of March, 1890. It is to be assumed that Gaughen, in his purchase from Smith, provided for the payment by Smith of the unmatured notes, and the forfeiture claimed would involve these advance payments. It is not to be even said that such a result

was contemplated by the parties at the making of the contract. It appears that when Kerr and Moody assigned the contract to Doyle, July 23, 1891, nearly seven months after default in the payment of the note due January 1, 1891, they had no thoughts of a forfeiture, if they even thought of a right to one, after the advance payments made in March, 1890. They were not in a position to conscientiously claim a forfeiture under the facts as they then existed, and no more so could their assignee, Doyle, who took his assignment on the twenty-third of July, and declared his forfeiture in ten days thereafter, with no material change as to facts. The provisions in the decree of the district court are fair as to the parties in making adjustments, and it will stand AFFIRMED.