I. S. STRUBLE, Trustee, v. HENRY ALLIN, Appellant.

**Land Contract Forfeiture:** SPECIFIC PERFORMANCE. One holding
land in trust contracted to sell with provision that on default of
purchaser the vendor might elect to declare the contract forfeited.
The equitable owner agreed to an assignment, by the purchaser of
the contract, to plaintiff, and agreed with the plaintiff for an ex-
tension of the time until 'April 30, 1897. · Shortly before such
date, the trustee stated to the purchaser that he would elect to
have the money paid by such a date, but did not intimate that on
failure to make such payment the contract would be canceled.
At such date the deed required by the contract could not have
been given, because of a mortgage on the property to its full
value. Without making any further demand, the trustee con-
veyed to another having knowledge of the contract. *Held* that,
on tender of the amount due on the 10th of May following, a con-
veyance by such grantee to plaintiff would be enforced.

*Appeal from Plymouth District Court.*—HON. F. R. GAY-
NOR, Judge.

·FRIDAY, DECEMBER 15, 1899.

ACTION in equity to compel the conveyance to the plain-
tiff of the title to real estate, and for other equitable relief.
There was a hearing on the merits, and a decree for the
plaintiff. The defendant appeals.—AFFIRMED.

*Ira T. Martin* for appellant.

*I. S. Struble* for appellee.

ROBINSON, C. J.—On the thirtieth day of April, 1892,
G. C. Maclagan, as trustee, held the title to lot 2 of block
50 in the First addition to Lemars for the use and benefit
of Aimee B. H. Chapman, and on that day entered into a
contract in writing with one James W. Hines for the sale
to him of the lot specified for the sum of five hundred and
fifty dollars. Two hundred dollars of the purchase price

was paid in cash, and the contract provided that the remainder should be paid in five annual payments of seventy dollars each, the day of payment being April 30th of each year, with interest thereon at the rate of 8 per cent. per annum. The contract also contained the following provision: "In case the second party (Hines) shall fail to make the payments aforesaid, or any of them, punctually, and upon the strict terms and times above limited, or to perform and complete all and each of these, his agreements and stipulations aforesaid, strictly and literally, and without any failure or default, the times of the payments and the performance of said agreements and stipulations being of the essence of this contract, then the first party shall have the right to declare this contract null and void, and, at the election of said first party, all the rights and interests hereby created, or then existing in favor of said second party, or derived under this contract, shall utterly cease and determine, and the premises hereby contracted shall revert to and revest in said first party (without any declaration of forfeiture or act of re-entry, or without any other act by said first party to be performed, and without any right of said second party for reclamation or compensation for money paid or improvements made) as absolutely, fully, and perfectly as if this contract had never been made. If, however, the said first party shall elect not to declare this contract null and void in case the second party shall fail to make the payments, or any of them, as above stipulated, the second party agrees to pay interest at the rate of 10 per cent. per annum annually on all payments of both principal and interest from the date of their maturity." In December, 1892, Hines assigned his interest in the contract to one Mary Freeman. The assignment was made in trust for the benefit of Hines. In November, 1893, several creditors of Hines obtained judgments against him, and executions were issued, and levied on the lot. Each judgment creditor thereafter commenced an action in equity to subject the lot to the payment of his judgment,

.and the proceedings had resulted in decrees rendered in October, 1894, which, in effect, subjected the interest of Hines in the lot to the payment of the judgments, and :authorized the judgment creditors to make the payments required by the contract, and, when full payment should be made, to receive a deed for the lot. At about the time those decrees were rendered, Hines assigned his interest in the contract to the plaintiff, as trustee for the benefit of the judgment creditors. The plaintiff has paid taxes on the lot, the installments of the purchase price due in April, 1893, .and April, 1894, and also something for improvements. ·On the tenth day of May, 1897, a deed executed by Mrs. Chapman and her husband, which purported to convey the lot to the defendant, was delivered to him by one Wraight, who .claimed to act as agent for the grantors. The plaintiff learned .of what had been done, and tendered to the defendant the :amount required to pay the unpaid installments of the pur·chase price for which the contract provided, upon condition that he execute and deliver to the plaintiff a good and sufficient deed for the lot, as required by the contract, but the .tender was refused. The plaintiff avers his readiness and :ability to pay the unpaid portion of the purchase price and ·asks that the defendant be required to convey the lot to him ·upon receiving from him the amount due under the contract. The defendant claims that the interest of Mrs. Chap-·man in the contract and in the lot were duly transferred to him, and that before the plaintiff had made the tender pleaded he had elected to declare the contract at an end by virtue of the provision we have quoted, and that it has ·ceased to be of any force or effect. When the contract was :assigned by Hines to the plaintiff, Mrs. Chapman, by a writing, approved the assignment, and extended the time ·for paying the installments which were due April 30, 1895, and April 30, 1896, to the thirtieth day of April, 1897. In March or April, 1897, Wraight, who was the local agent of

Mrs. Chapman, called at the office of the plaintiff, and said that he would like to have the plaintiff get the money for the payments which were about to become due under the contract, and wished to send for the deed. The plaintiff answered that he would write to the creditors and get the money as soon as practicable. Wraight did not make any objection to what was suggested, nor say that the money must be paid by the thirtieth day of April. The plaintiff wrote to the creditors as he had proposed to do, and on the tenth day of May had the money in hand for all of them but one. He had seen Wraight almost daily since the time of his request for payment, but Wraight had never on any of those occasions alluded to the matter of payment. On the date mentioned the plaintiff met Wraight, and asked him if he had received the deed, and was then informed by him that the lot had been conveyed to the defendant. Mrs. Chapman and her husband resided in the state of Washington. In the latter part of April, 1897, they executed and forwarded to Wraight a deed for the lot, with a blank for the name of the grantee. The deed referred to the contract of Hines, and his rights and those of his assignee were excepted from the covenant of warranty. That deed had been prepared by the attorney for the defendant, and forwarded to the Chapmans for execution. The Chapmans also sent to Wraight a promissory note, with a mortgage to secure the same on lot 1 of the block in which the lot in controversy is situated, for the purpose of releasing a mortgage for a larger amount on the two lots, which had matured the first day of April, the intent being to use the amount to be paid under the Hines contract in part payment of the debt secured by the larger mortgage. Neither of the Chapmans had formed any intention respecting the cancellation of the Hines contract, and no instructions were given to Wraight in regard to it. He acted in what he did according to his own inclinations. When he received the deed, he inserted therein the name of the defendant as

grantee, without any communication whatever with the plaintiff, and delivered it to the defendant on receiving from him two hundred and sixty-three dollars and ninety-eight cents, the amount due under the contract. The value of the lot at the time was not less than nine hundred dollars. The defendant relies upon *Land Co. v. Mickel,* 41 Iowa, 402, and similar cases, as sustaining his act in canceling the contract. We do not think the rule of that case is applicable to the facts disclosed by the evidence. The first payment under the contract the plaintiff was required to make was the one due April 30, 1893, and it was paid by him on the eighteenth day of May, 1894. The payment due April 30, 1894, was not made for some time after it was due, but no attempt to cancel the contract for the failure to make those payments promptly when due had been made. The time for making two of the payments was extended to April 30, 1897. When Wraight requested of the plaintiff payments of the amount due and the latter stated that he would write for the money to the creditors whom he represented, Wraight did not in any manner intimate that the payment must be made on the thirtieth day of April, or the contract would be canceled. When that time arrived, the Chapmans could not have given the title required by the contract, for the reason that the lot was then subject to a mortgage for its full value. The course in regard to payments which the Chapmans had pursued prior to that time, the conduct of Wraight, and the condition of the title were well calculated to induce the plaintiff to believe that the contract would not be canceled for failure to make payment promptly on the thirtieth day of April. Although the debt secured by the mortgage on the lot was past due, its owner had agreed to an extension of time, and there was not such a demand for its payment as justified the summary cancellation of the contract, and a sale of the lot, in order to secure a new loan. We conclude that the cancellation was unauthorized, that the tender made by the plaintiff should have been

accepted, and that the deed which he demanded should have been executed, and delivered to him. Our conclusion has support in the following cases: *Land Co. v. Hillis,* 76 Iowa, 246; *Gaughen v. Kerr,* 99 Iowa, 214. The decree of the district court provides that upon the payment by the plaintiff of two hundred and sixty-eight dollars, the amount of his tender, the defendant should execute to him a deed as provided by the contract, and we are of the opinion that the decree is right.

II. The defendant asks that the cost of an additional abstract be taxed to the plaintiff. The abstract objected to contains important matter not found in the abstract of the defendant, and the application to tax costs to the plaintiff is denied. The decree of the district court is AFFIRMED.

GRANGER, J., not sitting.