FULCHER & COMPANY *et al. vs.* DANIEL & ˙SON.

1. Although a bond for title obligated the owners of certain land to make title thereto to the obligee, " his heirs, executors and administrators," without adding his assigns, it was nevertheless assignable, and the assignee thereof was subrogated to all the rights of the obligee.
2. Where a firm sold a tract of land and gave a bond for title thereto, and subsequently one of the partners conveyed his interest to the other, who permitted the purchaser to renew the notes originally given for the purchase money and extended the time of payment thereof, he was bound by the terms of the bond and could be compelled to specifically perform the contract by the obligee in the bond or an assignee under him.
3. Although a bond for title contained a special contract that, upon failure of the obligee to make payments as therein specified, the obligors could give him notice in writing and could re-enter and take possession of the land at their option, yet where this was never done, but one of the obligors, who had obtained a conveyance of the interest of the other, accepted new notes in renewal of the one originally given for the purchase money, and subsequently sued such notes to judgment, the special contract furnished no ground for refusing a decree for specific performance on behalf of the assignees of the original obligee in the bond.

November 2, 1887.

Specific performance. Bond for title. Contracts. Assignment. Subrogation. Vendor and purchaser. Before Judge HINES. Scriven superior court. May term 1887.

Reported in the decision.

H. C. KITTLES, by brief, for plaintiffs in error.

T. H. POTTER, *contra.*

BLANDFORD, Justice.

Fulcher & Company sold a tract of land in the county of Scriven to Samuel Moffat for the sum of $145, and took his note therefor, and executed a bond for title, in which they obligated themselves to make title to this land to ".Samuel Moffat, his heirs, executors and administrators."

This was in January, 1884. In the bond for title was a special contract stating, that if Moffat failed to make payment for fifteen days after the payment became due, then they could give him notice in writing and could re-enter and take possession of the land, at their option. In January, 1885, James A. Fulcher conveyed all of his interest in this land to his partner, George A. Heard, of the firm of Fulcher & Company. Heard, after this deed was made, extended the time of payment allowed Moffat under the bond, taking from Moffat, in renewal of the note given for the purchase-money, two notes for the principal and interest due on the original note. Heard afterwards brought his action in a justice's court against Moffat on these two promissory notes, and obtained a judgment. Moffat then assigned this bond, in writing, to James H. Daniel & Son. Daniel & Son tendered to Heard the purchase-money,— the principal, interest and costs due on the judgment which Heard had obtained against Moffat in the justice's court. Heard declined to receive it. Daniel & Son then filed this bill, alleging the facts which I have stated, and praying for a specific performance of this contract. The bill was answered by Fulcher and by Heard, admitting all the allegations and facts stated in the bill; and the court decreed a specific performance of the contract. Thereupon Fulcher & Company prosecuted this writ of error to reverse that decree, assigning the same as error.

1. The point is made here by Fulcher & Company that this bond was unassignable,—that it was made payable to Moffat, and his heirs, executors and administrators, but not to his assigns. We think that, under sections 2244 and 2776 of the code, this bond was assignable. By section 2776 it is declared that all bonds for the payment of money or any article of property may be assigned in writing; and by section 2244, all choses in action arising upon contract may be assigned so as to vest the title in the assignee. That Moffat at the time he made the assignment owned this bond, there can be no doubt. The bond was payable

to him and his heirs, executors and administrators, and the title to the property was in him; and when he assigned this paper in writing to Daniel & Son, he assigned every interest and right he had, in and under that paper, to the assignee. The assignee stood in his shoes and was entitled to everything that the assignor was entitled to under that bond.

2. Another point insisted upon by the plaintiffs in error before us is, that as Fulcher, one of the firm of Fulcher & Company, had conveyed his interest to his partner, they were in a condition in which they could not comply with the bond; and hence, it was insisted, if they were liable for anything, they were liable for a breach of the bond at law, and they could not be made to specifically perform that contract. We differ from the counsel as to that position. Heard took Fulcher's title to his property knowing that this bond was in existence. He was one of the original obligors, being the partner of Fulcher, and knew or was charged with notice of everything contained in the bond; and in addition to that, he accepted from Moffat the latter's notes in renewal of the original note for the purchase money of the land, extending the time of payment; and he is bound by that knowledge. We do not see, therefore, any reason why Heard should not be required to make a title to this land.

3. Another point insisted upon by the plaintiffs in error was, that by the terms of that bond, they had a right, at their option, to rescind the contract and re-enter, by giving written notice. It does not appear that any written notice was given whatever. It does not appear, by the bill and answer, that the plaintiffs in error ever exercised their option in the way and manner specified in the bond for title. Daniel & Son offered this money, brought it into court and paid it into the hands of the court, all of it, principal, interest and costs due on the judgment obtained upon these notes, which had been substituted in place of the original note for the purchase money; and the decree of

the court was that the money should be paid over to Heard, and that Heard should execute a good and sufficient title to this property to Daniel & Son. We think the decree was right, under the facts of the case; and the judgment of the court below is therefore affirmed.