THOMAS H. VAN DYKE AND WARREN E. DREW *v.* DAMON L. COLE.

May Term, 1908.

Present:   ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed July 12, 1908.

*Equity—Contracts for Sale of Land—Relative Rights of Vendor
and Purchaser—Equitable Mortgages—Conveyance to Third
Person—Forfeiture of Contract—Time for Declaring For-
feiture—Burden of Proof—Waiver of Right of Forfeiture—
Specific Performance—Effect of Breach of Contract—Ten-
der of Performance—Necessity of—Laches—Necessary Par-
ties—Constructive Notice—Record of Subsequent Deed—
Presumptions in Aid of Decree Below.*

Where a court of equity has jurisdiction of a case for one purpose, as
for granting an injunction to stay waste, it will retain jurisdiction
for all other purposes and dispose of the whole matter.

Contracts for the sale and purchase of lands, contemplating the ven-
dee's use and occupancy thereof, are regarded in equity as analogous
to equitable mortgages; and though the vendor has the legal title,
his real interest is merely security for the payment of the purchase
money, and any stipulated right of forfeiture in his favor for
breach by the vendee of covenants against waste is only in aid of
the security.

In a suit in equity to enjoin waste pending orators' action of eject-
ment, a motion to strike defendant's crossbill from the files was
properly denied, where it appeared that the basis of the original
bill was a claimed forfeiture of defendant's rights under his con-
tract to purchase the land in question, under which contract, if
in force, defendant had rights superior to those of the orators on
the case made by their bill; and that defendant in his answer
denied a forfeiture in equity, and by his crossbill prayed that the
contract be specifically performed, and that further prosecution of
orators' action of ejectment be enjoined.

Even if time be regarded as of the essence of a contract for the sale
of land, nonperformance of the conditions of payment does not,

*ipso facto*, work a forfeiture, where such forfeiture is made optional with the vendor; but the vendor's right of forfeiture must be exercised promptly on the occurrence of the default, or it is waived.

A court of equity may infer such facts from those reported by a special master as necessarily or fairly result therefrom; and on appeal, the Supreme Court will presume that the court of equity made such inferences, if that is necessary to sustain the decree below.

The special master having found facts from which the court of equity could legitimately have inferred waiver of forfeiture of the vendee's rights under a contract for the purchase of land, the Supreme Court on appeal presumed that such inference was made below.

Where the failure to make payments at the times provided in a contract for the sale of land, and the commission of waste prohibited by the contract, were acquiesced in or waived, they cannot afterward furnish ground for forfeiting the contract.

Parties seeking to avail themselves of the optional privilege of the vendor of land to forfeit the rights of the vendee under the contract of sale for violation of its provision that the vendee shall not, before payment of the purchase money, commit any waste by cutting trees, otherwise than shall be necessary in clearing the land and for use for buildings, fences, and fuel, have the burden of showing that the cutting done was not for the permitted purposes.

In an action by the vendee for specific performance of a contract for the sale of land, testimony of a stranger to the contract that he met the vendor's representative and informed him that he was ready to pay the amount due on the purchase price, cannot be said to have been improperly admitted, on the ground that the vendor was not obliged to accept payment from a stranger; it not appearing that the witness did not testify that he was sent by the vendee to make payment and so informed the vendor's representative.

To support a crossbill by the vendee for specific performance of a contract for the sale of land it is not necessary that he shall have made a formal tender of the amount due, where the assignees of the vendor have brought ejectment against the vendee for the land, thereby at least attempting to rescind the contract, and have thereafter brought a bill' in equity to enjoin waste by him pending the ejectment suit, thereby in effect asserting that the contract had been terminated, and that a formal tender would be useless.

In an action by a vendee for specific performance of a contract for the sale of land, which gave the vendor a right to declare it forfeited in case timber was cut except for use on the premises, the fact that the vendee does not justify his cutting of timber on the land after notice that the assignees of the vendor intended to insist on their legal rights under the contract in case of future breaches, will not deprive the vendee of the right to specific performance, since the extent in equity of the interest of the assignees of the vendor is only as security for the amount due,—the right of forfeiture being in aid of the security, and it appearing that the timber so cut was worth only $70, and that, though the amount due on the contract is $700, the land, with the improvements made by the vendee, is worth from $2,500 to $3,000, and that the vendee, if denied specific performance, is without adequate remedy.

The vendee having taken and retained uninterrupted possession under the implied terms of the land contract, ever by his acts showing a fixed intention to carry the contract into execution, without any declaration or act by the vendor, or his assignees before bringing their action of ejectment against him, other than in recognition of a continuance of the contract in force, mere lapse of time will not prejudice the vendee's right to specific performance.

Persons taking a deed of land with full knowledge that another held a contract with the grantor for its purchase, and subject to his legal rights under that contract, stand with reference to it as did the grantor, and will be compelled to perform by conveyance of the land in the same manner and to the same extent as he would be, had he retained the legal title.

Where, after making a contract for the sale of land, the vendor conveys it to third parties subject to the vendee's rights, the vendor is not a necessary party to a suit by the vendee against such third parties for specific performance of the contract.

The record of a deed of land is not constructive notice to one who is the equitable owner thereof and in possession under a prior contract of purchase from the grantor, and subject to whose rights the deed was made.

A rehearing will not be granted in the Supreme Court under V. S. 1313-1316, when the purpose is to raise a question not before presented.

APPEAL IN CHANCERY. Heard on the pleadings, master's report and exceptions thereto, and motion to strike the cross-bill from the files, at the March Term, 1907, Essex County, *Taylor,* Chancellor. Exceptions overruled; motion denied; and decree that the defendant is entitled to the specific performance sought by his crossbill; that on or before October 10, 1907, the defendant pay the orators $699.93, and the costs in the eject-ment suit, less the orators' cost in this suit; that within ten days thereafter the orators convey to the defendant all their title to the premises in question, and in default thereof that the decree operate as such conveyance; that the orators be perpetually enjoined from prosecuting the ejectment suit; and that, if the defendant failed to make said payments within the time limited, his crossbill be dismissed with costs, and said injunction be dis-solved. The orators appealed.

Sometime in the summer of 1885, the defendant bought the land in controversy, known here as the "Cole land," of Florien Harriman, the owner, for the agreed price of $315, of which the defendant then paid ten dollars in cash, and gave his note for the balance, $305, dated June 10, 1885, and payable to the vendor or order in installments: thirty dollars one year from date, twenty-five dollars two years from date, and five annual installments of fifty dollars each thereafter, all with interest annually. At the same time they mutually executed under seal, a contract, or bond, whereby the party of the first part (vendor) "for the consideration hereinafter mentioned, hereby agrees to sell to the said party of the second part" (the defendant), "who hereby agrees to purchase" the lands here in question. "The said party of the second part hereby agrees to pay to said party of the first part, for the said premises, the sum of"—then fol-lows the consideration, and provisions for the payment of the installments in the note which is described. The contract was always in the defendant's possession until in January, 1900, when it was burned with his dwelling, and no copy or record of it was found. The master finds that it contained provisions as follows: "And the said party of the second part also agrees to pay all taxes and assessments which have been imposed on said premises during this current year, and all of which shall hence-forth be imposed on said premises; and not to commit or suffer any waste or damage on said land, by cutting down, carrying off,

or destroying any timber or trees, growing or being thereon, other than shall be necessary in clearing said land for cultivation, or for making necessary buildings and fences on the same, or for necessary fuel.

"And the said party of the first part does hereby agree that on payment of the purchase money and interest, and the performance of the agreements and stipulations as aforesaid, by and on the part of the said party of the second part, he will, by a good and sufficient warrantee deed, convey or cause to be conveyed to the party of the second part, his heirs or assigns, the aforesaid hereditaments and premises.

"And it is hereby agreed, that if the said party of the second part shall fail in the performance of any of the aforesaid agreements or stipulations on his part to be performed then it shall be lawful for the said party of the first part, at any time after such default, if he sees fit, to declare this contract forfeited and vacated, and to re-enter upon and take possession of said premises, and all buildings and improvements thereon, and to sell and dispose of the same to any person or persons whomsoever; and the said party of the first part shall and may retain all sums of money paid by the said party of the second part, or any subsequent purchaser, as and for liquidated damages for such failure."

On the making of this contract the defendant immediately went into the actual possession of the land under it, and from that time hitherto has been in possession thereof and occupied it as his home.

The note was not paid according to its terms, but payments have been made thereon as follows: Before October 5, 1889, the defendant performed labor for the vendor and let him have a harness, total in value $38.50, which amount was agreed upon on that date and indorsed on the note by the consent of both parties; a payment of $18, by way of work in haying by defendant's son, in 1890; in 1891, a payment of $18.50, by similar work of defendant's son; in March, 1895, a payment in money, $50, by the Averill Lumber Co. at defendant's direction; and in the fall of 1895, a payment of $30, by way of work by the defendant.

On September 5, 1896, the vendor gave a warranty deed to the orator Warren E. Drew, of lots 100 and 101, of which lots

the "Cole land" was a part, together with other lots of land, "except * * * 100 acres sold to Cole." The 100 acres there excepted is the "Cole land," and the Cole referred to is the defendant. On the same day Drew quitclaimed back to the vendor lots 100 and 101, with other land. April 12, 1898, the vendor quitclaimed to Drew an undivided half interest in "100 acres on which said Harriman had given Damon Cole a land contract." February 15, 1900, the vendor conveyed eight lots, including lots 100 and 101, to Drew, "excepting * * *, and subject to any right Cole * * * may have by land bond." On the 5th day of March, 1900, Drew and wife quitclaimed to the other orator, Thomas H. Van Dyke, an undivided one-half of the same eight lots, with the same exception and subject to the same right of the defendant "by land contract." Again on October 24, 1905, just before the bringing of the suit in ejectment hereinafter mentioned, the vendor executed a quitclaim deed to Drew of the same eight lots, with the same exception and subject to the same rights in the defendant. This deed states that it is given in confirmation of the former deed given by the vendor to Drew on the 15th day of February, 1900, "and to cure a defect in title existing at that time, to wit: an undischarged mortgage from the vendor to Gilbert Harriman dated November 28, 1881, * * *, said mortgage having been subsequently discharged on the 10th day of March, 1900." On the same 24th day of October, 1905, Drew quitclaimed to Van Dyke one undivided half of the same eight lots, with the same exception and subject to the same right in the defendant.

At the time of the defendant's purchase the soft wood timber had nearly all been cut off the land, the stumpage then being worth from seventy-five cents to one dollar a thousand feet, while hard wood stumpage was worth but very little. No land had then been cleared. The defendant fixed up a vacated lumbermen's shanty thereon to live in, later building a dwelling house and barn. The house was burned in January, 1900, and in 1901, he built a new house. This house and the barn above mentioned are now on the place. The defendant has cleared some twenty-five acres of land and cuts on it annually from sixteen to twenty tons of hay. The soft wood trees on the place in the time of the defendant's occupancy have grown rapidly in size and value, which fact was well known to all of the parties

to this suit.  At the present time the greatest value of the place is in its timber, there being some 300,000 to 350,000 feet of soft wood worth from six to eight dollars a thousand feet, stumpage, and 50,000 feet of hard wood worth from two to three dollars a thousand feet, stumpage.  The present value of the place is from $2,500 to $3,000.

Since 1885 and prior to November 1, 1905, the defendant from year to year cut in all from 140,000 to 150,000 feet of soft wood lumber from the place.  But there was no evidence that he cut any prior to 1887, except some for the buildings.  The master reports that it did not appear when between 1885 and 1905 timber was cut by the defendant, nor did it appear how much was cut during that period for necessary buildings, fuel, and fencing; although it did appear that some of the timber used for building the two houses and the barn was cut on the place.

From the fall of 1885 to March 5, 1900, Gilbert Harriman was the agent of the vendor to collect and receive payments on the note against the defendant who was so informed and acted accordingly.  About 1888 the vendor moved some miles away from the ''Cole land,'' leaving Gilbert in charge ''to see that no waste was committed,'' etc.  It is found that Gilbert, as such agent, knew or ought to have known of the cutting of timber from year to year up to 1900, and that the orators from the time they or either of them had any title to that land knew or ought to have known of it; that in fact Gilbert did know of it, for as early as 1894 or 1895 he told the vendor that the defendant was trespassing and committing waste.  Yet neither Gilbert, the vendor, nor the orators ever made any remonstrance to the defendant against it in any way before the latter brought their suit in ejectment.  When the orators took their deeds of the land in question they both knew that the defendant was in the occupancy thereof; that after the house was burned in January, 1900, they knew or ought to have known that the defendant was rebuilding in 1901, yet they made no objection and gave defendant no notice of their ownership nor of the claims they now make.

It is further found that neither the vendor, nor either of the orators, ever demanded payment of the sum due on the land contract; that the vendor never demanded possession of the land for any non-compliance with the conditions of the contract;

that neither the vendor nor the orators ever entered upon or attempted to take possession of the land for any alleged failure of the defendant to fulfil the contract up to the bringing of the suit in ejectment; that the defendant always recognized the validity of the note as a claim on the land, but at the time he took his contract and ever after when clearing up the land and cultivating it, erecting the various buildings thereon, and when cutting down the timber and selling it, he supposed he had a good title to the fee and was never notified nor knew that any-one claimed otherwise till the bringing of that suit. Other than whatever effect the bringing of that action may have had, no notice was ever given to the defendant by the vendor or by the orators of any rescission of the contract, nor of fixing a certain or reasonable time within which the defendant would be required to perform to save a rescission.

The suit in ejectment was brought about November 1, 1905, was duly entered in Essex County court, and is still pending. January 5, 1906, the orators having learned that the defendant was then engaged in cutting timber on the disputed land, brought their bill in this case. Defendant made answer and filed a cross bill.

Other material facts appear in the opinion.

*Amey & Hunt,* and *E. W. Smith* for the orators.

The orators' motion to strike out defendant's cross bill should have been granted. It should not introduce any distinct matter. It is auxiliary to the original suit, and a graft and dependency upon it. If its purpose be different from this, it is not a cross bill, though it may have a connection with the same general subject. *Rubber Co.* v. *Goodyear,* 9 Wall. (U. S.) 809; *Rutland* v. *Paige et al.,* 24 Vt. 181; *Slason* v. *Wright et al.,* 14 Vt. 208; *Hathaway* v. *Hagan,* 59 Vt. 77; *Kopper* v. *Dyer,* 59 Vt. 477; *Kreuger* v. *Ferry,* 41 N. J. Eq. 432; *Ayres* v. *Carver,* 17 How. 711; *Cross* v. *LeValle,* 1 Wall. 1; *Morgan etc. Co.* v. *Texas etc. R. Co.,* 137 U. S. 171; *Lund* v. *Skane's Bank,* 96 Ill. 181; *Gage* v. *Mayer,* 117 Ill. 632; *Johnson etc. Co.* v. *Union etc. Co.,* 43 Fed. 331; *Brownlee* v. *Warmack,* 90 Ga. 775. A cross bill being a means of defence, the allegations therein must relate to or be so immediately connected with the matter set up

in and the issues made by the original bill as necessarily to be involved in the decree pronounced under the original bill. *Allen* v. *Fury,* 53 N. J. Eq. 35; *Slater* v. *Cobb,* 153 Mass. 22; *Highlett* v. *Harris,* 1 Del. Ch. 349; *Whipple* v. *Fairhaven,* 63 Vt. 221; *Hastings* v. *Perry,* 20 Vt. 272; *Griffin* v. *Fries,* 23 Fla. 173; *White* v. *Yaw et al.,* 7 Vt. 357; *Royce* v. *Carpenter et al.,* 80 Vt. 37; *Wilkins* v. *Somerville et al.,* 80 Vt. 48; *Kirby* v. *Harrison,* 2 Ohio St. 326.

But if the cross bill is properly in the case, defendant is not entitled to any equitable relief. He must do equity, and show by a clear preponderance of the evidence that he is entitled to specific performance. *Longworth* v. *Taylor,* 1 McLean 395; *Conrad* v. *Lindley,* 2 Cal. 173; *Gentry* v. *Rogers,* 40 Ala. 442; *Brink* v. *Steadman,* 70 Ill. 241; *Marble Co.* v. *Ripley,* 10 Wall. 339; *Hatch* v. *Kizer,* 140 Ill. 583; 2 Story's Eq. Jur. §693; 2 Warv. on Vend., 861, 880. , Time is of the essence of the contract. *Benedict* v. *Lynch,* 1 Johns. Ch. 370; *Sowles* v. *Hall,* 62 Vt. 247. The subject-matter of the contract, growing timber, makes time of the essence of the contract, and defendant's laches has forfeited his rights. *Merritt* v. *Brown,* 19 N. J. Eq. 286; *Holt* v. *Rogers,* 8 Pet. 420; *Rogers* v. *Saunders,* 16 Me. 92; *Burton* v. *Landon,* 66 Vt. 367; *Bodwell* v. *Bodwell,* 66 Vt. 104; 1 Sug. on Vend. 344.

A court of equity will not decree a specific performance of a contract, unless the complainant can show that he has performed it in all its parts, or can show a just excuse for non-performance. *Walters* v. *Walters,* 132 Ill. 467; *Martin* v. *Morgan,* 87 Cal. 203; *Delevan* v. *Duncan,* 49 N. Y. 485; *McCabe* v. *Crosier,* 69 Ill. 501; *Madox* v. *McQuean,* 3 A. K. Marsh 400; *Penn* v. *McCullough,* 76 Md. 229; *Brown* v. *Haines,* 12 Ohio 1; *Cox* v. *Boyd,* 38 Ala. 42; *Jordan* v. *Deaton,* 23 Ark. 704; *Hoen* v. *Simmons,* 1 Cal. 119; *Allen* v. *Atkinson,* 21 Mich. 351; *Long* v. *Hartwell,* 34 N. J. Law 116; *Babcock* v. *Emrich,* 64 How. Prac. 435; *Bank* v. *Hagner,* 7 L. Ed. (U. S.) 219; *Thaxter* v. *Sprague,* 159 Mass. 397; *Hubbel* v. *Von Schoening,* 49 N. Y. 326.

Even in those cases holding that, when time is not of the essence of the contract, the contract will be specifically enforced, it is likewise held that some excuse must be shown for the delay. 2 Warv. on Vend. 879; *Mix* v. *Balduc,* 78 Ill. 215; *McDermid* v. *McGregor,* 21 Minn. 111. And in the excuse offered, Cole's

good faith must be established. *Alexander* v. *Hoffman*, 70 Ill. 114; *Fitch* v. *Willard*, 73 Ill. 92.

Here the forfeiture, if any, arises from the breach of a condition precedent by reason of Cole's inattention and negligence. *Barnet* v. *Turnpike Co.*, 15 Vt. 757. There is no power in a court of chancery to vest an estate which is to arrive on a condition precedent until that condition is performed. *Baltimore City Bank* v. *Smith*, 3 Gill. & J. 265; *N. Y. etc. R. Co.* v. *City of Providence et al.*, 19 Atl. 759.

There was a covenant against waste, and defendant has broken it; and the master is unable to find the amount of damage done by such waste. Relief cannot be given where the measure of damages is uncertain. *Brewster* v. *Zinc Co.*, 140 Fed. 801; 16 Cyc. 77.

*Howe & Hovey* for the defendant.

A cross bill is proper when necessary to obtain full relief to all parties touching the matters of the original bill. *Griffon* v. *Fries*, 23 Fla. 173, 11 Am. St. Rep. 351; *German* v. *Machin*, 6 Paige 288; Story's Eq. Pl. §§389, 391.

The land contract created the relation of mortgagor and mortgagee. The conditions of the contract were conditions subsequent, not precedent. In equity defendant became the owner of the land when the contract was executed and delivered. *Davis* v. *Hemenway*, 27 Vt. 590; *Whiting* v. *Adams*, 66 Vt. 679; *Paine* v. *McDowell*, 71 Vt. 28; *Einscott* v. *Buck*, 33 Me. 530; *Hooper* v. *Wilson*, 12 Vt. 695; *Wilder* v. *Davenport*, 58 Vt. 642; *Oakman* v. *Walker*, 69 Vt. 344; *Ordway* v. *Farrow*, 79 Vt. 192; Pom. Eq. Jur. §§368, 372; *Royce* v. *Carpenter*, 80 Vt. 37.

Since neither the vendor nor the orators ever demanded payment of the sum due on the contract, unless the orators did so when they brought the suit in ejectment, there could be no forfeiture. *Buckmaster* v. *Needham*, 22 Vt. 617; *Willard* v. *Benton*, 57 Vt. 286; *Guild* v. *Richards*, 16 Gray 309; *Hubbard* v. *Hubbard*, 97 Mass. 188; *Converse* v. *Blumrick*, 14 Mass. 109.

The right to treat the breaches of contract as a forfeiture was waived by the acceptance of money after it was due and by the open acquiescence in the cutting of timber. The first default in the payment took place on June 10, 1886, and money

was accepted in part payment as late as 1895. Timber was cut off in 1894 and in 1895 and payments were accepted after the timber was cut. In fact a part of the proceeds of the timber was paid in on the contracts. The master finds that from 1895 to November 1, 1905, Cole from year to year cut in all from 140,000 to 150,000 feet of soft wood timber, and that Gilbert Harriman, who was Florien's agent up to 1900, knew or ought to have known the fact, and that the orators from the time they, or either of them, had any title to the Cole place, knew or ought to have known the fact, and that neither Gilbert nor the orators made any remonstrance to the defendant. This conduct was most certainly a waiver of any right to claim a forfeiture. *Garnhart* v. *Finney,* 40 Mo. 449; *Davis* v. *Robert,* 89 Ala. 402, 18 Am. St. Rep. 126; *Linscott* v. *Buck,* 33 Me. 530; *Hubbard* v. *Hubbard,* 97 Mass. 188.

It is a well settled and familiar doctrine that a court of equity will not interfere to enforce a forfeiture. *Woolen Company* v. *Newton,* 57 Vt. 451; *Waterman* v. *Clark,* 58 Vt. 601; *Smith* v. *Jewett,* 40 N. H. 530. But a defaulting vendee may always be relieved from a forfeiture of this kind by payment of the amount due with interest. *Sanborn* v. *Woodman,* 5 Cush. 36; *Atkins* v. *Chilson,* 11 Met. 112; *Walker* v. *Wheeler,* 2 Conn. 299; *Hall* v. *Delaplaine,* 5 Wis. 206, 68 Am. Dec. 57.

Time is not of the essence of the contract unless it is made so by express stipulation, or necessarily follows from the nature of the contract. *Young* v. *Daniels,* 2 Iowa 126, 63 Am. Dec. 477; *Converse* v. *Blumrick,* 14 Mich. 109; *Young* v. *Rathbone,* 16 N. J. Eq. 224; *Walker* v. *Emerson,* 20 Tex. 706, 73 Am. Dec. 207.

As a general rule when a contract is of such a nature that the object for which the forfeiture was provided can be accomplished by setting it aside and awarding compensation, equity will relieve. In this case payment of the amount due on the contract is full compensation to the orators, and the object for which the forfeiture was provided is accomplished, viz.: the payment of money. *Austin* v. *Austin,* 9 Vt. 420; *Henry* v. *Tupper,* 29 Vt. 358; *Hagar* v. *Buck,* 44 Vt. 285.

WATSON, J. The orators moved to strike the cross bill from the files for that it is based on matters irrelevant to the case

made by the original bill, and it is urged that the motion should have been granted. The determination of this question requires an examination of the original bill with reference to subject-matter and relief sought, and a relative similar examination of the cross bill.

The orators brought their action of ejectment to recover the possession of the land in question and damages. The declaration alleged that on the 12th day of April, 1898, the orators were seised and possessed of the land in their own right in fee and so continued until the 13th day of April, 1898, when the defendant, without law or right, and contrary to the will of the orators, thereinto entered and ejected, etc., the orators therefrom, and ever since has kept and still keeps them out of said premises, etc. In their bill the orators allege the bringing of the suit at law, recite the declaration, and allege the facts set forth therein to be true; that they are the sole owners of the land in question; that from the day of the bringing of that suit the defendant has been and still is despoiling, wasting, and irreparably damaging said land by cutting down and removing therefrom valuable timber, and that he intends to continue so to do unless restrained by injunction; and praying for an injunction restraining the defendant from further cutting down and removing or selling timber on or from said land during the pendency of the action at law and until final judgment therein, and for general relief. A temporary injunction was obtained according to the prayer.

The defendant made answer alleging and relying upon his purchase of the land and his bond or contract executed in connection therewith, and his thenceforth continuous possession of the property under the contract to the present time. The answer further alleges the part payment of the consideration in money by the defendant, at the time of the purchase, the giving of his note for the balance, and the making of payments on the note from time to time; the condition of the contract, among other things, that on payment of the note by the defendant the vendor would execute and deliver to him a good and valid warranty deed to convey to him a good and valid title to the land in fee simple; that he has made valuable improvements on the land by way of clearing and making a portion of it arable, erecting buildings, etc.; that he always has been and now is ready and willing to pay the amount due and owing on said

note and accept such a deed of the land; that the vendor sub-
sequently quit-claimed all his right, title, and interest in said
lands to the orators subject to the rights of the defendant under
his contract, and indorsed and delivered to them the said note,
which conveyance and note the orators took with full knowledge
of the land contract from the vendor to the defendant and of
the latter's rights thereunder.

The cross bill contains substantially the same allegations
as the answer, and praying for specific performance of the con-
tract, that the orators be enjoined from further prosecuting
their action at law, and for general relief. The contract im-
pliedly shows that under it the defendant was immediately to
take and thereafter have possession of the property, and the
master finds that he did so take possession and thus continued
to have it openly, notoriously, exclusively, and undisturbedly,
up to the time of the bringing of the suit at law, subject to such
liabilities as the facts reported imposed.

In making out a case under their bill the orators are obliged
to show title derived from Florien Harriman subsequent to his
contract with the defendant, and subject to the latter's rights
under it. It devolves upon them to show not only a non-per-
formance of the contract by the defendant, but also a declaration
of forfeiture by the party having such optional right. Indeed,
the basis of the orators' claimed right to relief is that all rights
of the defendant under the contract had been forfeited and con-
sequently that any further cutting of timber by him would be
a commission of waste and an irreparable damage to the land;
and upon their prayer he was temporarily enjoined from "fur-
ther cutting down, removing or selling any timber or lumber
on or from the land and premises described," regardless of the
purpose of cutting, or the use to be made of the timber or lum-
ber when cut. No question is made but that the case is prop-
erly in equity for the purpose of an injunction to stay waste,
and any relief agreeable to the case made by the bill, though not
within the special prayer, may be had under the prayer for
general relief. The Court having jurisdiction of the case for
one purpose it will be retained for a final disposition of the
whole matter. *Hastings* v. *Perry,* 20 Vt. 272; *Whipple* v.
*Fair Haven,* 63 Vt. 221, 21 Atl. 533. Thus it appears that the
real basis of the orators' case is a claimed forfeiture of the con-

tract under which, if in force, the defendant has rights paramount to those of the orators on the case made by their bill. The defendant by his answer in effect denies a forfeiture in equity, and by cross bill prays that the contract be performed, and that further prosecution of the action of ejectment be perpetually enjoined. The cross bill is a proceeding to procure a complete determination of a matter already in litigation, and the new facts introduced by it are such, and only such, as are necessary to have before the court in the decision of the questions raised in the original suit, to enable it to do full and complete justice to all the parties before it in respect to the cause of action on which the orators rest their right to aid or relief. Consequently in overruling the motion there was no error. *Rutland* v. *Paige,* 24 Vt. 181; *Krueger* v. *Ferry,* 41 N. J. Eq. 432, 5 Atl. 452.

It is urged that time is of the essence of the contract, and that by its terms the defendant's acts in breach of covenant changed the legal relation of the parties, permitting the vendor, and his assigns, to take possession, sell the property with all improvements, and retain all sums of money paid, as liquidated damages for failure to perform. And that even though it be thought that the contract does not expressly make time essential, yet here the subject-matter—principally growing timber the value of which has materially increased—is such that time will be considered material and the defendant will not be allowed to lie by until the change in his favor and then ask for specific performance. Assuming but not deciding that time is of the essence, the effect of the contract is not such that non-performance *ipso facto* works a forfeiture. A forfeiture was made optional with the vendor, and if he did not see fit to declare it, the contract by virtue of its own provisions continued in full force.

It is further urged that the vendor, by his conveyance to Drew, in effect elected to rescind his contract with the defendant. But this is not so, since as before seen in each instance the conveyance to Drew was expressly made subject to the defendant's rights under the contract, and the note was transferred to the orators in connection therewith. Instead of these conveyances indicating a rescission, the vendor thereby recognized the contract and note as subsisting obligations. The same recog-

nition was made by Drew in his conveyances to Van Dyke; and as grantees neither of them could take greater rights than were possessed by his grantor.

Not only does the record show that no declaration of forfeiture in fact or effect was ever made prior to instituting proceedings at law to eject the defendant in November, 1905, and then only as the effect of that action, but in addition thereto it is found that a payment of fifty dollars in cash was made on the note by the defendant and accepted by the vendor in March, 1895,—between two and three years after the last installment was due,—and that a further payment of thirty dollars, by way of work by the defendant for the vendor, was made in the fall of the same year. The receiving of these payments manifested not only the vendor's assent to previous delays, but also his understanding that the contract was still in full force. Again the conveyances by the vendor to Drew and by the latter of one undivided half to Van Dyke, subject to the rights of the defendant under his contract, were severally in 1898, in 1900, and finally as late as October 24, 1905. In *Hunter* v. *Daniel*, 4 Hare, 420, the covenants and agreements were such that in case the plaintiff failed to perform, "then, and in any such case, it should be lawful for the defendants, or for any of them, by writing to rescind the agreement," etc. It was held that each breach on the part of the plaintiff in non-payment of money was a new breach of the agreement; and that, time being of the essence of the contract, such breach gave defendants a right to rescind the contract; but that right should have been asserted the moment the breach occurred. That the defendants were not at liberty to treat the agreement as still subsisting, and to take the benefit of it at the expense of the plaintiff, if they meant to insist that it was at an end.

In *Gaughen* v. *Kerr*, 99 Iowa, 214, 68 N. W. 694, the action was for specific performance of a contract for the sale of land. The vendee executed his several promissory notes for the agreed price, payable at different times in a period of nearly three years; and in addition thereto the vendee assumed the payment of the taxes on the land for the previous year and the subsequent taxes. The contract provided that in case the vendee should fail in strict literal performance thereof, the vendor "shall have the right to declare this agreement null and void,"

etc. Later when one of the notes was more than six months overdue and unpaid, and the taxes for two years were long since due, the vendors, not having exercised their right to declare a forfeiture, assigned the notes and contract, and conveyed the land to one of the defendants in that case, after which the assignee, claiming the right of strict forfeiture, entered a cancellation on the contract. It was held that such an option must be exercised by election at the time of default, to be of any effect. The court saying that a different rule would leave the matter entirely at the mercy of the seller; that if the land should appreciate in value, it would be within his power at any time to declare a forfeiture, take possession, and reap the benefits of the enhanced value; while if there should be a depreciation, he could insist on the enforcement of the contract; that such a construction would not be upheld unless the clear import of the contract required it; that it was a reasonable construction and more in harmony with equity and good conscience, to hold that the parties intended, not only that prompt payment should be made, but also that the right to forfeit, to be available, should be exercised promptly. To the same effect are *Hall* v. *Delaplaine,* 5 Wis. 206, 68 Am. Dec. 57; *Fargusson* v. *Talcott,* 7 N. Dak. 183, 73 N. W. 207; *Pier* v. *Lee,* (S. Dak.) 86 N. W. 642; *Fulcher & Co.* v. *Daniel & Son,* 80 Ga. 74, 4 S. E. 259. In *Battell* v. *Matot,* 58 Vt. 271, 5 Atl. 479, it is said: ''The essentiality of time is matter of intention, and may be waived by the party entitled to insist upon it, and is waived by conduct on his part that shows he could not consistently have intended to insist upon it, or that he intended to treat the contract as still subsisting notwithstanding the delay. And when the essentiality of time has been waived, it cannot be revived again without notice to the party in default, fixing a certain and reasonable time within which he is required to perform, in which case the time thus allotted becomes essential, and if the party neglects to perform within it, a court of equity will not aid him to enforce the contract, but will leave him to whatever legal remedy he may have.''

It is unnecessary to decide how far, if at all, the rule requiring prompt exercise of the optional right of forfeiture is affected by the provision of the contract that it shall be lawful ''at any time after'' default; nor is it necessary to consider

whether, as a matter of law, there was a waiver of forfeiture by the vendor or by the orators; for facts are found from which the court below could legitimately infer such a waiver in fact by the vendor as long as he had the legal title, and by the orators thereafter, if there were any new acts of default by the defendant, until the bringing of their action of ejectment, and to sustain the decree this Court will presume that such inference was there made. This is conclusive that the orators cannot now base any right of forfeiture on the defendant's failure to pay at the original times appointed, nor afterwards, since no notice was ever given him by the vendor nor by the orators subsequently fixing a certain and reasonable time within which payment must be made. It is also conclusive against them regarding all acts of the defendant in committing prohibitive waste before the proceedings at law. For such acts once acquiesced in or waived cannot afterwards afford· a ground for terminating the contract.

The question then is whether the findings of the master show such subsequent cutting of timber as constitutes waste for which the optional right of forfeiture is given. The contract contemplates that the defendant might necessarily cut down and carry off growing timber in clearing land for cultivation, and by its terms such cutting does not constitute waste or damage thereunder. It does not appear that the cutting referred to in this paragraph was not lawfully done under that provision of the contract; and the orators, seeking to avail themselves of ·the optional privilege, must be held strictly within the limits of the authority giving the right. The result is that on the facts found the orators are not entitled to relief under the original bill.

Should the defendant be granted relief under the cross bill? That he has shown himself ready, desirous, and eager to perform by making full payment since the waiver of time as an essential part of the contract, there can be no question in view of the facts found that the defendant has always been ready to pay the amount due on the note and, as late as 1896, told the vendor that if he would meet defendant and ascertain the amount, the latter would pay it, he not then knowing that the legal title had been conveyed to the orators; and that after the service of the original bill, but before either the answer or cross bill was filed, the defendant's solicitor and one E. M. Bartlett went to the office of the orators' solicitor and informed him that they were ready

to pay the amount due and asked to see the note. The orators' solicitor did not then have the note and so did not show it. The master finds that the defendant's solicitor and Bartlett were then ready, and are now, to pay the sum due. Exception was taken because Bartlett was allowed to testify that he was then ready to make such payment, it being argued that the orators were under no obligation to accept payment of him, a stranger. It appears that Bartlett testified concerning that interview and for aught before us he may have stated that he and the solicitor were sent there by the defendant to pay the note and so informed the orators' solicitor. We cannot say the testimony was improperly received.

It is said, however, that no formal tender was ever made by the defendant, and that this was necessary. But in bringing their action of ejectment the orators at least attempted to rescind the contract, and thereafter in bringing their bill under oath and procuring the injunction, they in effect asserted that the contract had been terminated. In these circumstances a formal tender would have been useless, for which reason if for no other it was not required in order to support an action for specific performance. *Hunter* v. *Daniel,* 4 Hare, 420; *Ockey* v. *Cook,* 41 N. J. Eq. 350, 7 Atl. 495; *Bauman* v. *Pinckney,* 118 N. Y. 604, 23 N. E. 916. Nor does it make any difference in this respect that the relief is sought by cross bill. *Fargusson* v. *Talcott,* cited above.

Assuming that in seeking specific performance it devolves on the defendant to show that he has done or offered to do, or is ready and willing to do, all the essential and material acts required of him by the contract, except so far as they are shown to have been waived, will the fact that the defendant has not justified the cutting of timber after the action of ejectment was brought, prevent such relief? It is argued by the orators, though not set up as a defence in their answer to the cross bill (the necessity of which we do not consider), that this unjustified act precludes him from obtaining a decree in his favor. Yet this does not necessarily follow. By the contract the defendant has the equitable title to the land and the rightful possession thereof. The orators have the legal title, but the extent of their interest in equity is as security for the payment of the amount due on the note, such contracts having always been regarded in

equity as analogous to equitable mortgages. The right of forfeiture for breach of covenants against waste was only in aid of the security. If the orators are paid the amount due on the note with the costs allowed them, they will receive full compensation and have no reason to complain of that cutting of timber even though it constituted waste. On the other hand, in addition to sundry payments, the defendant has made valuable and permanent improvements, intending to occupy the premises, as he has, for farming purposes and as a home. The cutting of timber after notice to him by way of the action of ejectment that the orators intended to insist upon their legal rights under the contract in case of future breaches,—treating the bringing of that suit as such an unequivocal act as unmistakably showed that intention, although there may be some doubt whether the orators could rescind the contract without first returning or tendering the unpaid note to the defendant,—was in no just sense an impairment of the security and the orators were not injured thereby. Indeed, that this act was comparatively of very little consequence to the orators is manifest from the facts that the stumpage value of the timber so cut, 9,962 feet, was only $69.73, that the amount due from the defendant to the orators as of October 2, 1906, was $699.93, that there is still on the land some 300,000 to 350,000 feet of soft wood timber and 50,000 feet of hard wood, and that the place is worth from $2,500 to $3,000. In these circumstances specific performance·should be decreed, for thereby the orators will receive justice by way of full compensation, while a denial of such relief would leave the defendant without any adequate remedy on his contract, and result in great hardship and injustice to him. *Hager* v. *Buck,* 44 Vt. 285, 5 Am. Rep. 368;·Pom. Con. sec. 358.

It is said that the defendant's delay in asking has been unreasonable, and hence such relief should not be granted. Yet the case stands with the essentiality of time waived; and since the defendant took and has retained the uninterrupted possession of the premises under the implied terms of his contract, ever by his acts showing a fixed, marked intention to carry the contract into execution, without any declaration or act by the vendor, or by the orators before instituting their ejectment suit, other than in recognition of a continuance of the contract in force, equity will not allow the lapse of time to prejudice his

remedial right.    Pom. Con. sec. 404; *Waters* v. *Travis,* 9 Johns. 450; *Bruce* v. *Tilson,* 25 N. Y. 194; *Ely* v. *McKay,* 12 Allen, 323.

It is further urged that since the orators are not parties to the contract they should not be compelled to perform; that the contract is personal with the vendor, otherwise there is no force in the last part of the provision therein that he will "convey or cause to be conveyed," etc.    It is a sufficient answer to this position to say that whatever the force of this provision may be as against the vendor, it does not affect the equitable rights of the defendant against the orators.    They took their deeds of the property with full knowledge of the defendant's contract and subject to his rights under it.    In these circumstances they stand in equity with reference to the contract as did the vendor, and will be compelled to perform by a conveyance of the land in the same manner and to the same extent as he would have been liable to do, had he retained the legal title.    *Wilkins* v. *Somerville,* 80 Vt. 48, 66 Atl. 893, 11 L. R. A. (N. S.) 1183.    Nor is it necessary to the granting of such a decree that the vendor be a party to the suit, for he has no interest in the land and no relief is sought against him.    *Bridgman* v. *St. Johnsbury & Lake Champlain R. R. Co.,* 58 Vt. 198, 2 Atl. 467.

Exception was taken to the master's report wherein he states that there was no proof that the defendant knew the vendor had sold to orator Drew, or that the orators or either of them had any interest in the "Cole land" until a little time before the ejectment suit was begun, on the ground that the orators' deeds admitted in evidence showed that they were of record.    But this position is without force, since the record of these deeds was not constructive notice to the defendant, he being the equitable owner and in possession under a prior contract to which the deeds were made subject.    *Leach* v. *Beatties,* 33 Vt. 195; *Howard* v. *Clark,* 71 Vt. 424, 45 Atl. 1042, 76 Am. St. Rep. 782.

The exceptions to the report relied upon in argument but not herein particularly noticed, are in effect overruled so far as they are material in disposing of the other questions in the case.

*Decree affirmed and cause remanded with mandate.*

WATSON, J.    After this cause was heard and determined in this Court and final entry made, and after the same had been remanded and a mandate sent down, a petition was filed by the orators for a rehearing, under the provisions of sections 1313-1316 of the Public Statutes, and thus by force of the law of those sections the case was again transferred to this Court. It appears from the petition that the orators seek, if a rehearing be granted, to present the constitutional question of the impairment of the obligation of contracts, claiming that the decision of this Court impairs the obligation of the land contract involved, in that the Court, it is claimed, failed to give force and effect particularly to the words therein, "at any time after such default," etc. It further appears from the petition, as the fact is, that this constitutional question was not raised before this Court when the hearing was had—that the orators now seek to raise it for the first time.    In *State* v. *Franklin County Savings Bank & Trust Co.*, 74 Vt. 246, a motion was made, after a decision had been rendered in this Court, for a rehearing on the ground, as here, that the moving party desired to present a question in argument not before presented.    It was held that a rehearing would not be granted to give an opportunity to raise and present a new question, and the motion was overruled, but no further opinion was written.    That case was prior to the enactment of the statute under which the present petition is brought, yet the holding is equally applicable when a rehearing is sought under this statute.

*Rehearing refused, petition dismissed, and cause remanded.*